1  Robert C. Schubert (SBN 62684)
2  Juden Justice Reed (SBN 153748)
   Willem F. Jonckheer (SBN 178748)
3  SCHUBERT & REED LLP
   Three Embarcadero Center, Suite 1650
4  San Francisco, California 94111
   Telephone:     (415) 788-4220
5  Facsimile:     (415) 788-0161

6
7  Local Counsel for Plaintiff

8  Marian P. Rosner
   Michael A. Schwartz
9  Renee L. Karalian
   WOLF POPPER LLP
10 845 Third Avenue
   New York, NY 10022
11 Telephone:     (212) 759-4600
   Facsimile:     (212) 486-2093
12

13 Counsel for Plaintiff Public Employees'
   Retirement System of Mississippi
14

15                UNITED STATES DISTRICT COURT
16             NORTHERN DISTRICT OF CALIFORNIA
                      SAN JOSE DIVISION
17

18 | ARCHDIOCESE OF MILWAUKEE            | Civil Action No.: 3:05-cv-3395-JF |
   | SUPPORTING FUND, INC., On Behalf of |                                    |
19 | Plaintiff and All Others Similarly Situated, |                            |
   |                                      | **CLASS ACTION** |
20 |                                      |                   |
   |                        Plaintiff,    | **[ELECTRONICALLY FILED]** |
21 |                                      |                   |
   |            v.                        | **PUBLIC EMPLOYEES' RETIREMENT** |
22 |                                      | **SYSTEM OF MISSISSIPPI'S** |
   | MERCURY INTERACTIVE                  | **MEMORANDUM OF LAW IN SUPPORT** |
23 | CORPORATION, et al.                  | **OF MOTION TO INTERVENE** |
   |                                      |                   |
24 |                                      | Date: February 3, 2006 |
   |                        Defendants.   |                        |
25 |                                      | Time: 9:00 a.m. |
26 
27 Additional captions on next page
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

| DENNIS J. JOHNSON, On Behalf of Himself and All Others Similarly Situated, | Civil Action No.:  3:05-cv-3864-PJH |
| | |

DENNIS J. JOHNSON, On Behalf of
Himself and All Others Similarly Situated,

            Plaintiff,

    v.

MERCURY INTERACTIVE
CORPORATION, et al.

           Defendants.

Civil Action No.:  3:05-cv-3864-PJH

KAREL MUNAO, Individually and On
Behalf of All Others Similarly Situated,

            Plaintiff,

    v.

MERCURY INTERACTIVE
CORPORATION, et al.

           Defendants.

Civil Action No.:  3:05-cv-4031-MJJ

CHANDRA SINGHAL, On Behalf of Herself
and All Others Similarly Situated,

            Plaintiff,

    v.

MERCURY INTERACTIVE
CORPORATION, et al.

           Defendants.

Civil Action No.:  3:05-cv-4036-PJH

# TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -ii-

I.      INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -1-

II.     PROCEDURAL HISTORY AND BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . -2-

        A.      The July 5, 2005 Announcement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -2-

        B.      The August 29, 2005 Announcement . . . . . . . . . . . . . . . . . . . . . . . . . . -4-

        C.      The October 4, 2005 Disclosure . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -5-

        D.      The November 2, 2005 Disclosure of Defendants' Fraudulent Conduct . . . . . -6-

        E.      The Lead Plaintiff Process . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -7-

III.    THE PERS' COMPLAINT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -8-

IV.     ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -10-

        A.      Intervention as a Matter of Right Under Rule 24(a) Should Be Granted . . . . -11-

                1.      Movant has a significant protectable interest . . . . . . . . . . . . . . . . . -11-

                2.      Without intervention Movants interest will be impaired and the
                        PSLRA will be subverted . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -12-

                3.      The motion to intervene is timely filed . . . . . . . . . . . . . . . . . . . . . -16-

                4.      The MPF Group cannot adequately represent the Movant's interest . -17-

        B.      In the Alternative, Permissive Intervention Under Rule 24(b)
                Should Be Granted . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -18-

                1.      Independent grounds for jurisdiction exist . . . . . . . . . . . . . . . . . . . -19-

                2.      Motion is timely . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -19-

                3.      Common question of law or facts exist . . . . . . . . . . . . . . . . . . . . . -19-

                4.      No delay or undue prejudice exists . . . . . . . . . . . . . . . . . . . . . . . . -20-

V.      CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -20-

## TABLE OF AUTHORITIES

### FEDERAL CASES

In re Alliance Pharm. Sec. Litig.,
   1995 U.S. Dist. LEXIS 11351 (S.D. Cal. May 23, 1995)... . . . . . . . . . . . . . . . . . . .14

County of Fresno v. Andrus
   622 F.2d 436 (9th Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11, 18

In re Cavanaugh,
   306 F.3d 726 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

In re Daou Systems, Inc., Sec. Litig.,
   411 F.3d 1006 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Donnelly v. Glickman,
   159 F.3d 405 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  19

Dura Pharms., Inc. v. Broudo,
   ___ U.S. __, 125 S. Ct. 1627 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

Eckert v. Equitable Life Assur. Society of the United States,
   227 F.R.D. 60 (E.D.N.Y. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  19

Ferrari v. Impath, Inc.,
   2004 U.S. Dist. LEXIS 13898 (S.D.N.Y. July 15, 2004)  . . . . . . . . . . . . . . . . . . .  15

Forest Conservation Council v. United States Forest Serv.,
   66 F.3d 1489 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11, 18

Lax v. First Merchs. Acceptance Corp.,
   No. 97-2716, 1997 U.S. Dist. LEXIS 12432 (N.D. Ill.1997)  . . . . . . . . . . . . . . . .  14

Plumbers & Pipefitters Local 572 Pension Fund v. Cisco Sys.,
   2005 U.S. Dist. LEXIS 25398 (N.D. Cal. Oct. 26, 2005)  . . . . . . . . . . . . . . . . . . .  18

In re Rite Aid Corp. Securities Litigation,
   No. 99-1349(DAB), 1999 U.S. Dist. LEXIS 19753 (D. Pa. 1999)  . . . . . . . . . . . .  14

S. Cal. Edison Co. v. Lynch,
   307 F.3d 794 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11,18

San Jose Mercury News, Inc. v. United States District Court,
   187 F.3d 1096 (9th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

In re Select Comfort Corp. Securities Litigation,
   2000 U.S. Dist. LEXIS 22697 (Jan. 27, 2000)  . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

Sierra Club v. United States EPA,

995 F.2d 1478 (9th Cir. 1993)........................................................................11

Southwest Ctr. for Biological Diversity v. Berg,
    268 F.3d 810 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11

Teamsters Local 445 Freight Division Pension Fund v. Bombardier Inc.,
    2005 U.S. Dist. LEXIS 10780 (S.D.N.Y. June 1, 2005).. . . . . . . . . . . .  2, 12, 13, 15

In re Telxon Corp. Security Litigation,
    67 F. Supp. 2d 803 (N.D. Ohio 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

Tocher v. City of Santa Ana,
    219 F.3d 1040 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16

United States v. City of Los Angeles,
    288 F.3d 391 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11

United States ex rel. Killingsworth v. Northrop Corp.,
    25 F.3d 715 (9th Cir. 1989) ....................................................... 16

Venegas v. Skaggs,
    867 F.2d 527 (9th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  18

Waller v. Financial Corp. Of America,
    828 F.2d 579 (9th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10


**DOCKETED CASES**

Hevesi v. Merck & Co., Inc.,
    No. 04 Civ. 5866, at 49 (D.N.J. March 21, 2005) .................................... 7,9

In re Leapfrog Enterprises, Inc. Security Litigation,
    No. C-03-05421 RMW, slip op. (N.D. Ca. July 27, 2005) . . . . . . . . . . . . . .  2, 13, 15

In re Leapfrog Enterprises, Inc. Sec. Litig.,
    No. C-03-05421 RMW, slip op. ( N.D. Ca. July 5, 2005) . . . . . . . . . . . . . . . . . . . .  13


**FEDERAL STATUTES**

Fed. R. Civ. P. 24 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1, 10, 11, 12, 18

Fed. R. Civ. P. 26(a) ................................................................. 17

15 U. S. C § 78u-4(a)(3)(B)(i)........................................................ 15

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Movant Public Employees' Retirement System of Mississippi ("Mississippi PERS") submits this Memorandum of Law, pursuant to Fed. R. Civ. P. 24, in support of its motion for an order permitting Mississippi PERS: (i) to intervene in the above actions; (ii) to file its Complaint (annexed as Exh. A to the Affidavit of Michael A. Schwartz (the "Schwartz Aff.")) against Mercury Interactive Corporation ("Mercury") for a class period of October 22, 2003 through November 1, 2005; and (iii) to publish a notice thereof and of the opportunity to move for lead plaintiff within 60 days of publication of such notice.  Movant further requests that the Court reserve judgment on the Motion of the Mercury Pension Fund Group (the "MPF Group") for Consolidation of the Related Actions, Appointment as Lead Plaintiff and Approval of Proposed Lead Plaintiff's Selection of Lead Counsel ("MPF Group's Motion for Lead Plaintiff") until the Court hears Mississippi PERS' Motion for Intervention.

## I.   __INTRODUCTION__

Between  August 19, 2005 and October 18, 2005, six class action complaints (including two amended complaints) were filed against Mercury and certain of its officers alleging violations of the federal securities laws in connection with allegedly false and misleading statements issued during various class periods.  According to the press releases published by the law firms filing the actions, the complaints alleged: "Defendants' internal controls and corporate compliance mechanisms during the initial Class Period were flawed and deficient, causing [Mercury] stock to trade at artificially inflated levels.  Specifically, the complaint alleges that defendants concealed extraordinary auditing expenses in connection with the 'highly likely' need to restate earnings for multiple quarters and years." See August 31, 2005 Scott + Scott Press Release, Schwartz Aff., Exh. B.  The press releases also notified Mercury shareholders of their right under the Private Securities Litigation Reform Act of 1995 (the "PSLRA") to move for lead plaintiff by October 20, 2005.

None of the complaints allege the scheme and course of conduct as ultimately disclosed by the Company on November 2, 2005, and as alleged in the Mississippi PERS' Class Action Complaint for Violations of the Federal Securities Laws (the "PERS' Complaint," annexed as Exh. A to the Schwartz Aff.). As set forth herein, the complaints filed prior to the Company's October 4, 2005 disclosure were premature, and the notices provided to the Mercury shareholders were deficient in that they did not provide adequate notice of the claims to be asserted against Mercury. See, e.g., In re Leapfrog Enterprises, Inc. Sec. Litig., No. C-03-05421 RMW, slip op. at 3 (N.D. Ca. July 27, 2005) (Schwartz Aff., Exh. C) (republication of notice required "to avoid the 'potential injustice' of leaving 'entire classes of potential lead plaintiffs . . . out of the notice procedure.'"(quoting Teamsters Local 445 Freight Div. Pension Fund v. Bombardier, Inc., No. 05 Civ.1898(SAS), 2005 U.S. Dist. LEXIS 10780, at *9 (S.D.N.Y. June 1, 2005))).  As further explained herein, the notices published following Mercury's October 4, 2005, which put the market on notice of the potential seriousness of the nature of the wrongdoing at Mercury, only provided Mercury investors with, at best, 15 days notice of their rights, as opposed to the 60 days mandated by the PSLRA.

Thus, unless the relief requested herein is granted, Mississippi PERS and other similarly situated Mercury investors will be prejudiced.

## II.    PROCEDURAL HISTORY AND BACKGROUND

### A.    The July 5, 2005 Announcement.

On July 5, 2005, Mercury issued a press release announcing that the Company would not meet its guidance for the second quarter.  The press release stated, in pertinent part:

> "The disappointing second quarter results are due primarily to a shortfall in Europe," stated Mercury Chairman and Chief Executive Officer Amnon Landan. "Mercury has a large market opportunity, strong competitive position, and global customer base. We have also been engaged over the past several months in a

thorough review of our business operations and are now taking proactive actions to position us to execute in the second half of 2005. These actions will result in third quarter restructuring charges."

The press release also revealed that the SEC had initiated an "informal inquiry" in November 2004 concerning past stock option grants, and that the Company had appointed a Special Committee to conduct an internal investigation.

In response to the July 5, 2005 disclosure, the price per share of Mercury stock dropped **$0.25 - or 0.7%** - to close at $37.96 per share.  Moreover, stock market analysts, focusing on the earnings shortfall, remained positive on the Company and rated the stock a "Buy."   For example, Midnight Trader reported on July 5, 2005, "Mercury Interactive Down Fractionally After Lowering Q2 Guidance - Pares Back More Aggressive Early Day Declines."  In addition, MarketWatch issued a report on July 5, 2005 headlined, "Mercury Interactive warns and shares decline."  According to the article, analysts remained "relatively upbeat on the stock despite the firm's [earnings] shortfall."

On August 19, 2005, a complaint styled Archdiocese of Milwaukee Supporting Fund, Inc. v. Mercury Interactive, C-05-3395 JF, was filed in this Court alleging violations of the federal securities laws and seeking damages on behalf purchasers of Mercury securities during the period December 1, 2004 through July 5, 2005.[1]  In its complaints, the Archdiocese of Milwaukee alleges that "on July 5, 2005, defendants finally revealed the shocking news about previously undisclosed accounting irregularities and the Company's ongoing internal investigation and auditing process, a process that had already incurred as much as $1 million in undisclosed expenses."  See Corrected Complaint, ¶5.  This allegedly "shocking news," coupled

---

[1] This plaintiff filed a Corrected Complaint on August 25, 2005, with an expanded class period of October 22, 2003 through July 5, 2005.

with the earnings shortfall, caused the Company's stock to decline a mere 0.7%.

On August 21, 2005, the Archdiocese of Milwaukee issued a press release informing investors of their right to move for lead plaintiff no later than October 20, 2005, and described defendants' alleged fraudulent conduct as follows:

> As late as April 28, 2005, Defendants increased their previous 2005 annual guidance, serving to affirm prior statements that the company was continuing in a positive direction. Unbeknownst to investors, it is alleged that Defendants concealed auditing expenses during the class period.

See August 21, 2005 press release, Schwartz Aff., Exh. B.

Following the July 5, 2005 announcement, however, and as evidenced by the (i) 0.7% decline in the price per share of Mercury stock; (ii) the stock market analysts' reaction to the July 5, 2005 announcement; and (iii) the Archdiocese's August 21, 2005 press release, the market was not, and could not have been, put on notice of the nature and magnitude of the fraud being perpetrated by Mercury.  Indeed, Mississippi PERS had not yet suffered a noticeable loss.

**B.      The August 29, 2005 Announcement.**

On August 29, 2005, Mercury provided the market with an update on the internal investigation into employee stock option grants and disclosed that its previously issued financial statements for the years 2002 through 2004 and the first quarter of 2005 would be restated. Mercury attributed the restatement to "errors" in its financials as a result of the "actual dates of determination for certain past stock option grants differ[ing] from the originally selected grant dates for such awards."  See PERS' Complaint, ¶55.

Responding to the Company's announcement, analysts shrugged off the restatement and termed it "more of an inconvenience than a material event."   See PERS' Complaint, ¶¶56-57.

In reaction to the Company's August 29, 2005 announcement, the Company's stock price fell $.06 - 0.2% - per share to $36.88.

On September 23, 2005, counsel for the Archdiocese of Milwaukee filed a third complaint, styled Johnson v. Mercury Interactive Corporation, C-05-3864 PJH, expanding the class period to August 30, 2005.  This new complaint, however, failed to add any allegations with respect to the August 29, 2005 announcement.[2]

As demonstrated by the (i) $.06 or 0.2% decline in the price per share of Mercury stock immediately following the August 29, 2005 announcement; (ii) the stock market analysts' reaction thereto; and (iii) the allegations in the Johnson Complaint and the August 31, 2005 press release announcing the filing thereof (see Schwartz Aff., Exh. B), the market was not, and could not have been, put on notice of the nature and magnitude of fraud being perpetrated by Mercury.

**C.      The October 4, 2005 Disclosure.**

It was not until October 4, 2005 that the market was put on notice of the potential seriousness of the nature of the wrongdoing at Mercury.  On October 4, 2005, the Company issued a press release disclosing that the informal inquiry from the SEC had been converted to a formal investigation.   See PERS' Complaint, ¶60.

In reaction to the October 4, 2005 disclosure, Mercury's stock price dropped $5.29 per share or 14.3%, to close at $31.61 per share.  See PERS' Complaint, ¶61.

The Company's October 4, 2005 disclosure led to the filing of two additional complaints (and an amended complaint) with class periods of October 22, 2003 through October 4, 2005. See Munao v. Mercury Interactive Corporation, C-05-4031 MJJ, and Singhal v. Mercury Interactive Corporation, C-05-4036 PJH.

Starting on October 5, 2005, following the filing of these complaints, additional notices

---

[2]  On August 31, 2005, counsel for the Archdiocese of Milwaukee issued an additional press release, stating that the "complaint alleges that defendants concealed extraordinary auditing expenses in connection with the 'highly likely' need to restate earnings for multiple quarters and years."  See Exh. B to the Schwartz Aff.

were published informing investors of the right to move to be appointed lead plaintiff within 15 days - by October 20, 2005.  See Schwartz Aff., Exh. B.

**D.    The November 2, 2005 Disclosure of Defendants' Fraudulent Conduct.**

The magnitude and true nature of defendants' fraud was not disclosed until November 2, 2005.  On that date, the Company issued a press release announcing the resignations of its CEO, CFO and General Counsel and further, that a Special Committee of the Board of Directors found that the Company's CEO, CFO and General Counsel were aware of, participated in, and benefitted from "forty-nine instances in which the stated date of a Mercury stock option grant is different from the date on which the option appears to have actually been granted."  In addition, the Company disclosed the existence of a $1 million loan to defendant Landan which had not received prior Board approval.  The Company also admitted that on at least three occasions, CEO Landan improperly reported exercise dates for options exercised, which would have had the effect of reducing Landan's income and exposing the Company to possible penalties for failure to pay withholding taxes.  Finally, the Company admitted that its internal controls and accounting controls with respect to option grants and exercises were inadequate.  The weaknesses allowed dates of both grants and exercises to be manipulated. They also allowed grant dates to be changed to provide employees with more favorably priced options. See PERS' Complaint, ¶63.

Calling these disclosures "extraordinary new developments," analysts downgraded their outlooks on the Company's stock as reported by Dow Jones Newswires on November 2, 2005. An analyst with Goldman Sachs stated "[t]he only potential positive on the horizon is that the company may now appear to be an attractive acquisition target given its dominance in the higher-growth testing market."  See PERS' Complaint, ¶¶65-66.

Following this announcement, the price of Mercury's common stock plummeted on

November 2, 2005 from $35.00 to $25.66 per share – a 27% drop. <u>See</u> PERS' Complaint, ¶64.

**E.    The Lead Plaintiff Process.**

The lead plaintiff deadline was October 20, 2005, a mere 16 days after the October 4, 2005 disclosure – as opposed to the 60 days mandated by the PSLRA. This was hardly adequate time for an institutional investor such as Mississippi PERS to weigh the merits of bringing an action and receive the necessary approvals to move for lead plaintiff. Moreover, the October 20, 2005 deadline was 13 days before the Company issued its November 2, 2005 press release disclosing to investors the true nature and magnitude of defendants' fraudulent conduct - the disclosure of which caused the Company's stock price to plummet.

Had counsel for plaintiffs Archdiocese and Johnson not engaged in a "mad scramble to the courthouse," and instead waited for the facts to be uncovered, the lead plaintiff deadline would have been 60 days from publication of the filing of the <u>Munao</u> and <u>Singhal</u> actions – December 5, 2005. <u>See</u> <u>Hevesi v. Merck & Co., Inc</u>., No. 04 Civ. 5866, at *49 (D.N.J. March 21, 2005) (Schwartz Aff., Exh. D) ("[T]he PSLRA was designed to deal with . . . the mad scramble to the courthouse").

Tellingly, only one lead plaintiff motion was filed. The Steamship Trade Association/International Longshoremen's Association Pension Fund, the City of Sterling Heights General Employees Retirement System, the City of Dearborn Heights Police and Fire Retirement System, and the Charter Township of Clinton Police & Fire Pension System (collectively, the "MPF"), a cobbled together group of unrelated funds, moved for lead plaintiff claiming that it has sustained a loss of approximately $448,632 during a class period between October 22, 2003 and October 4, 2005.

In the MPF Group's Motion for Lead Plaintiff, the MPF Group makes no reference to the October 4, 2005 disclosure, and characterizes the claims asserted as follows:

> [T]he complaints allege that defendants issued a series of
> statements during the Class Period that were false and misleading,
> including posting positive earnings estimates and filing positive
> reports with the SEC with the knowledge (undisclosed to the
> investing public) that their revenue guidelines were not in
> accordance with GAAP.
>
> On July 5, 2005, Mercury revealed to the investing public news
> about previously undisclosed irregularities within the Company's
> accounting department.  In addition, the Company revealed that
> Mercury had been the subject of an internal investigation and
> auditing process, which had at that point in time already cost as
> much as $1 million in undisclosed expenses.  The concealed
> deficient and defective internal controls allowed the Company to
> assure the resale of its convertible notes.

<u>See</u>  MPF Group's Motion for Lead Plaintiff at p. 2.

The Motion for Lead Plaintiff is set to be heard on December 9, 2005.

## III.   <u>THE PERS' COMPLAINT</u>

By this motion, Mississippi PERS seeks leave to file the PERS' Complaint submitted

herewith.  The PERS' Complaint seeks damages for defendants' violations of the federal

securities laws on behalf of itself and all other persons or entities who purchased Mercury

securities on the open market, other than defendants and certain related persons and entities,

during the period October 22, 2003 through November 1, 2005.  <u>See</u> PERS' Complaint, ¶1.

Mississippi PERS alleges that during this class period, defendants knowingly or

recklessly allowed Company employees, including defendants Chief Executive Officer Amnon

Landan and Chief Financial Officer Douglas Smith, as well as General Counsel Susan Skaer, to

change the grant dates on employee stock options in order to reap financial benefits associated

with more favorable strike prices on the options.  <u>See</u> PERS' Complaint, ¶2.  This scheme

resulted in the Company issuing false and misleading financial statements which under-reported

compensation expense and over reported net income.  <u>See</u> PERS' Complaint, ¶5.

Pursuant to Accounting Principles Board (APB) Statement No. 25, adopted by the

Company to account for stock options awarded to employees, the measurement of compensation with respect to employee stock options is the difference, on the date of the grant, between the fair market value of the underlying share and the option exercise price.  In order for the Company to incur $0 compensation expense as a result of awarding employee stock options, it was the Company's stated policy to grant stock options to its employees equal to the fair market value (the price of the underlying stock on the date of grant). Thus, the grant price and exercise price would be the same; accordingly, there would be no compensation expense.  See PERS' Complaint, ¶3.

The PERS' Complaint alleges, however, that defendants recklessly or intentionally instituted woefully deficient internal controls surrounding the administration of the stock-based compensation plan, which enabled Company employees to enrich themselves by knowingly and fraudulently changing the stock option grant dates (the date the option is exercisable) to dates on which the Company's stock price was lower than the actual grant date (and thus lower than fair market value on the actual grant date).  See PERS' Complaint, ¶4.

The manipulations by which the individual defendants and the other Company employees they enabled, including the General Counsel, fraudulently created income for themselves caused the Company to under-report the corresponding compensation expense and over report net income on its financial statements.  See PERS' Complaint, ¶5.

As a result of defendants' actions, the PERS' Complaint alleges that the market price of Mercury common stock was artificially inflated during the class period.  See PERS' Complaint, ¶6.

The PERS' Complaint further alleges that it was not until November 2, 2005, that the market learned of the magnitude and nature of defendants' fraudulent conduct.  On that date, Mercury issued a press release announcing that a Special Committee of the Board of Directors

found that the Company's CEO, CFO and General Counsel were aware of, participated in, and benefitted from "forty-nine instances in which the stated date of a Mercury stock option grant is different from the date on which the option appears to have actually been granted."  As a result of this revelation, these top officers resigned from the Company and the Company stock price declined 27%.  See PERS' Complaint, ¶7.

## IV.   **ARGUMENT**

Fed. R. Civ. P. 24 provides for intervention of right and permissive intervention.  The right to intervene is unconditional when there is either (1) a federal statute conferring such unconditional right or (2) the party has an interest in the property or transaction subject to the action and the disposition of the action might impair or impede the party from protecting that interest, unless the party is already adequately represented by other parties in the action.  See Fed. R. Civ. P. 24(a).  The right to intervene is permissive when there is either (1) a federal statute conferring such conditional right or (2) the party's claim and the action at issue have a common question of law or fact.  See Fed. R. Civ. P. 24(b).  In the Ninth Circuit, Rule 24 has traditionally received a liberal construction in favor of applications for intervention.  See San Jose Mercury News, Inc. V. United States District Court, 187 F.3d 1096, 1100 (9th Cir. 1999); Waller v. Financial Corp. of America, 828 F.2d 579, 582 (9th Cir. 1987).

### A.   **Intervention as a Matter of Right Under Rule 24(a) Should Be Granted**

In the Ninth Circuit, a movant can intervene as of right under Rule 24 if:

(1) it has a significant protectable interest relating to the property or transaction that is the subject of the action; (2) the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; (3) the application is timely; and (4) the existing parties may not adequately represent the applicant's interest.

S. Cal. Edison Co. v. Lynch, 307 F.3d 794, 802 (9th Cir. 2002) (quoting United States v. City of Los Angeles, 288 F.3d 391, 397 (9th Cir. 2002)(internal quotation marks omitted)).  This Rule is

applied liberally by the Ninth Circuit.  See <u>Southwest Ctr. for Biological Diversity v. Berg</u>, 268

F.3d 810, 818 (9th Cir. 2001).  The Ninth Circuit considers practicality over technicality when

making the decision to allow an intervention.  <u>Id.</u> at 818.

Mississippi PERS satisfies these criteria.

### 1.      Movant has a significant protectable interest.

Under Fed. R. Civ. P. 24(a), there is no requirement of a specific legal or equitable

interest to intervene. Rather it "is primarily a practical guide to disposing of lawsuits by

involving as many apparently concerned persons as is compatible with efficiency and due

process," <u>S. Cal. Edison Co.</u>, 307 F.3d at 803 (quoting <u>County of Fresno v. Andrus</u>, 622 F.2d

436, 438 (9th Cir. 1980)(internal quotations and citations omitted)).  Because there is no

requirement that the interest be a specific legal or equitable one, the interest test is a threshold

inquiry as opposed to a bright-line rule.  <u>See</u> <u>City of Los Angeles</u>, 288 F.3d at 398.  "[I]n order to

establish a protectable interest sufficient to intervene as of right, an applicant-intervenor must

establish (1) "that the interest [asserted] is protectable under some law, and [(2)] that there is a

relationship between the legally protected interest and the claims at issue." <u>Forest Conservation</u>

<u>Council v. United States Forest Serv.</u>, 66 F.3d 1489, 1494 (9th Cir. 1995) (quoting <u>Sierra Club v.</u>

<u>United States EPA</u>, 995 F.2d 1478, 1484 (9th Cir. 1993)).

Mississippi PERS has sustained a loss of approximately $1.5 million as a result of

defendants' fraudulent conduct as alleged in the PERS' Complaint.  <u>See</u> Schwartz Aff., Exh. E.

As such, pursuant to Fed. R. Civ. P. 24(a), Mississippi PERS has a significant protectable

interest relating to the transactions which are the subject of the actions.

### 2.      Without intervention Movants interest will be impaired and the PSLRA will be subverted.

Rule 24(a)(2) encourages intervention where the Movant would be impaired or impeded

in its ability to protect its interests and the interests of similarly situated Mercury shareholders. Mississippi PERS has suffered significant losses under the new facts and the class period asserted in the PERS' Complaint.  Without intervention, Mississippi PERS will not be able to publish notice to the class of the claims asserted in the PERS' Complaint, and of the right to move for lead plaintiff.

Moreover, if the relief requested is not granted, the PSLRA will be subverted by condoning the "mad scramble to the courthouse" and the filing of actions before they are ripe. Had plaintiffs in the actions waited for the facts to develop,

> It is entirely possible that other well-qualified lead plaintiffs would have moved had they been notified that they were potential class members.  Allowing plaintiffs in this case to proceed without publishing a new notice reflecting their additional claims would potentially exclude qualified movants from the lead plaintiff selection process. Although appointment is certainly easier-and thus more efficient-when there is only one movant, it is contrary to the spirit of the PSLRA to achieve that efficiency by failing to notify potential movants of their rights. Where membership of a class is substantially expanded by the filing of an amended complaint that adds new claims, fairness dictates that those new class members ought to be informed of the existence of pending claims that may affect their rights.

Teamsters, 2005 U.S. Dist. LEXIS 10780 at *8-9; see also In re Select Comfort Corp. Sec. Litig., No. 99-884 (DSD/JMM), 2000 U.S. Dist. LEXIS 22697 at *22 (D. Minn. Jan. 27, 2000) (republication necessary where lead plaintiffs amended complaint to "add new claims and new allegations").

Courts in this district are in agreement.  See, e.g., In re Leapfrog Enterprises, Inc. Sec. Litig., No. C-03-05421 RMW, slip op. at 3 (after appointing lead plaintiff, court ordered re-notice to the class of expanded class period, finding that republication was required "to avoid the 'potential injustice' of leaving 'entire classes of potential lead plaintiffs . . . out of the notice procedure.'"(quoting Teamsters, 2005 U.S. Dist. LEXIS 10780 at *9)); see also In re Leapfrog

Enterprises, Inc. Sec. Litig., No. C-03-05421 RMW, slip op. at 4-5 ( N.D. Ca. July 5, 2005) (Schwartz Aff., Exh. F) (ordering movants to give notice of their amended complaint because it "vastly expands the original complaint" and "dramatically alters the contours of the lawsuit").

In the annexed PERS' Complaint, Mississippi PERS has set forth new facts that were not available to the market until October 4, 2005 and November 2, 2005. The complaints filed prior to the November disclosure, and in particular those filed prior to the October disclosure, were premature as the market was not apprised of the information and did not know of the fraud perpetrated at the Company with respect to stock-based compensation. In fact, the analyst reports issued on the Company after the July 5, July 28 and August 29, 2005 disclosures were relatively positive. Moreover, in the Archdiocese complaint, the last day of the class period fell on July 5, 2005, at which time there was only a $0.25, or 0.6%, decline in the stock price from its previous day of trading. In the Johnson action the class period ends on August 30, 2005 - however, in response to the August 29 disclosure Mercury's stock price fell only $.06 or 0.2%. But cf. Dura Pharms., Inc. v. Broudo, ___ U.S. ___, 125 S. Ct. 1627 (2005) ("The complaint's failure to claim that Dura's share price fell significantly after the truth became known suggests that the plaintiffs considered the allegation of purchase price inflation alone sufficient").

In comparison, in reaction to the November 2, 2005 news, Mercury's stock price plummeted $9.34 per share, a decline of 27%, from its previous day of trading on extremely heavy volume of nearly 46 million shares traded. See In re Alliance Pharm. Secs. Litig., No. 92-1380-1EG (AJB), 1995 U.S. Dist. LEXIS 11351, 9-10 (S.D. Cal. May 23, 1995) ("If the disclosure of a fact leads to a large rise or fall in the price of a company's stock, one may infer that reasonable investors considered the fact important in deciding whether to buy or sell the stock"). This is the most significant drop in the trading price of the Company's stock during the proposed PERS' Complaint class period.

While other cases have held that an amendment to the complaint that merely changes the class period or makes other minor revisions will not justify revisiting the contest for lead plaintiff, the facts here can be readily distinguished.[3]  In fact, Mississippi PERS is not seeking to simply extend the class period; it is seeking to add additional allegations concerning the improper conduct whereby Mercury employees, led by the former CEO, CFO and General Counsel, fraudulently manipulated the Company's stock option plan, and as a result, caused the Company to issue false and misleading financial statements.  These disclosures caused a material drop in Mercury's common stock and substantial damages to investors.  Expanding the allegations in the actions, in this instance, would therefore alter the contours of the lawsuit as it would focus the attention to the most serious issue - defendants' admittedly fraudulent conduct, which resulted in the most significant losses to date.  The November disclosure is not simply another corrective disclosure in the string of disclosure made in this case; it is *the* disclosure that has caused the most significant loss and which, for the first time, fully revealed the true extent of the harm caused by defendants.

Thus, the allegations of the PERS' Complaint are distinct enough from the actions that it "vastly expands the original complaint" and "dramatically alters the contours of the lawsuit."  In re Leapfrog Enterprises, Inc. Sec. Litig., No. C-03-05421 RMW, slip op. at 4-5.

Moreover, the PSLRA instructs courts to select as lead plaintiff the one "most capable of

---

[3] See, e.g., In re Rite Aid Corp. Secs. Litig., No. 99-1349(DAB), 1999 U.S. Dist. LEXIS 19753 at *2-4 (E.D. Pa., Dec. 20, 1999) (the Court denied a re-visitation to the lead plaintiff decision because of the similarity between the claims and found "the only material distinction" between the cases was the class period); Lax v. First Merchs. Acceptance Corp., No. 97-2716, 1997 U.S. Dist. LEXIS 12432 at *13 (N.D. Ill., August 6, 1997) (the Court held that no new notice of the extended class period is required where the later action asserts "substantially the same claims");  In re Telxon Corp. Sec. Litig., 67 F. Supp. 2d 803, 805 (N.D. Ohio 1999) (the Court noted that the twenty-seven pending actions "share essentially the same allegations").

adequately representing the interests of class members." In re Cavanaugh, 306 F.3d 726, 729 (9th Cir. 2002)(citing 15 U.S.C. § 78u-4(a)(3)(B)(i)).  The most capable plaintiff - and hence the lead plaintiff - is the one who has the greatest financial stake in the outcome of the case, so long as it meets the requirements of Rule 23.  Id.  In enacting the PSLRA, Congress believed that the best way "to prevent 'lawyer-driven' litigation and to ensure that 'parties with significant holdings in issuers, whose interests are more strongly aligned with the class of shareholders, will participate in the litigation and exercise control over the selection and actions of plaintiffs counsel'" was to encourage institutional investors to serve as lead plaintiffs.  Ferrari v. Impath, Inc., No. Civ. 5667, 2004 U.S. Dist. LEXIS 13898, at * 11 (S.D.N.Y. July 15 2004)(internal citations omitted).

On its face, the filing of the Archdiocese and Johnson actions in reaction to the 0.6% and 0.2% stock drops can be nothing but "lawyer-driven litigation."  The filing of the PERS' Complaint will remedy these and other deficiencies and significantly increase the number of potential class members and potential lead plaintiff candidates.  "Where membership of a class is substantially expanded by the filing of an amended complaint that adds new claims, fairness dictates that those new class members ought to be informed of the existence of pending claims that may affect their rights."  Teamsters, 2005 U.S. Dist. LEXIS 10780 at *9.

Clearly, Mississippi PERS, a large institution with a loss of approximately $1.5 million, has a greater stake in the outcome of the litigation than the MPF Group, with an aggregate reported loss of only $448,632.  It is also conceivable that there are other institutions which, given the opportunity, would also seek to be lead plaintiff.  Therefore, it would be unjust to bar Mississippi PERS and other similarly situated shareholders, who had only 16 days notice from the date of the October 4, 2005 disclosure, to seek appointment as lead plaintiff in these cases.

There is no prejudice to the other parties by allowing the intervention because there have been no responsive pleadings and the Court has not yet ruled on the pending lead plaintiff

motion.  Thus, the only prejudice would be to the Movant and similarly situated shareholders if the Court denies the motion to intervene and does not allow Movant to provide notice to the class of the claims asserted in the PERS' Compliant and the right to move for lead plaintiff within 60 days thereafter.  As such, the Court should find that Mississippi PERS has a significant protectable interest.

**3.     The motion to intervene is timely filed.**

Fed. R. Civ. P. 26(a) provides that the court shall, upon timely application, permit intervention if the other requirements of the statute have been met. The Ninth Circuit looks to:

> (1) the  stage of the proceeding at which the applicant seeks to intervene; (2) the prejudice to the other parties; and (3) the reason for and length of the delay.

Tocher v. City of Santa Ana, 219 F.3d 1040, 1044 (9th Cir. 2000) (quoting United States ex rel. Killingsworth v. Northrop Corp., 25 F.3d 715, 719 (9th Cir. 1994)).

Here, there is no question that the motion is being timely filed.  The lead plaintiff decision has not yet been rendered and the December 9, 2005 hearing is more than two weeks away.  Moreover, Mississippi PERS seeks to intervene in connection with new information being released to the market on November 2, 2005.  Eight days later Mississippi PERS notified the Court of its intent to file its Motion to Intervene, and promptly filed this motion.  After the October 4, 2005 and November 2, 2005 disclosures, Mississippi PERS and its counsel promptly determined its losses, made the decision that intervention in this action was necessary to protect Mississippi PERS' interests, received the necessary approvals to move forward, and file this motion as well as the PERS' Complaint.

**4.     The MPF Group cannot adequately represent the Movant's interest.**

In the Ninth Circuit, an intervenor is considered adequately represented by a party to an action if:

(1)  the interests of a present party to the suit are such that it will undoubtedly make all of the intervenor's arguments; (2) the present party is capable of and willing to make such arguments; and (3) the intervenor would not offer any necessary element to the proceedings that the other parties would neglect.

Andrus, 622 F.2d at 438-439.  According to Forest Conservation Council, 66 F.3d at 1498, "it is sufficient to show that the representation *may* be inadequate." (emphasis in original).  Under the PSLRA, there is a presumption that the MPF Group would not be an adequate representative of the class.

The PSLRA mandates that the Court appoint as lead plaintiff the movant with the largest financial loss.  Mississippi PERS has incurred losses of approximately $1.5 million and the MPF Group has claimed losses of $448,632.  Therefore, there is a presumption that the MPF Group is not the most adequate plaintiff.   In addition, Mississippi PERS' rights and the rights of similarly situated shareholders will not be represented in the action.  Based on the claims asserted in the previous complaints and the summary of the claims in the MPF Group's Motion for Lead Plaintiff, it is obvious that it will not fully prosecute the potential claims of Mississippi PERS as there is no reference to the effect of the November disclosure on the Company's shareholders.  In fact, the MPF Group's Motion for Lead Plaintiff does not even reference the October disclosure and asserts claims supported by what may ultimately be deemed immaterial stock market reactions.  See In re Daou Systems, Inc., Sec. Litig, 411 F.3d 1006, 1025-1027 (9th Cir. 2005) (holding that plaintiff adequately pleaded loss causation and economic loss because the securities at issue dropped significantly); Plumbers & Pipefitters Local 572 Pension Fund v. Cisco Sys., No. Civ. 01-20418 (JW), 2005 U.S. Dist. LEXIS 25398 at *17 (N.D. Cal. October 26, 2005) (holding that plaintiff sufficiently alleged a causal connection between the misrepresentations and the decline in the securities because plaintiff "alleges that there was a steep drop in the price of Cisco's stock after Cisco Defendants began to disclose the alleged "truth" about its financial

condition.") (citation omitted).

**B.      In the Alternative, Permissive Intervention Under Rule 24(b) Should Be Granted.**

Rule 24(b)(2) gives the Court discretion to grant intervention when there is a common question of law or fact between the intervenor's claim and the main action. Fed. R. Civ. P. 24(b)(2). The Ninth Circuit has applied the following test with respect to permissive intervention:

> [A] court may grant permissive intervention where the applicant for intervention shows (1) independent grounds for jurisdiction; (2) the motion is timely; and (3) the applicant's claim or defense, and the main action, have a question of law or a question of fact in common.

S. Cal. Edison Co., 307 F.3d at 803 (internal quotations omitted). Additionally, "[i]n exercising its discretion, the district court must consider whether intervention will unduly delay the main action or will unfairly prejudice the existing parties." Donnelly v. Glickman, 159 F.3d 405, 412 (9th Cir. 1998); Venegas v. Skaggs, 867 F.2d 527, 530 (9th Cir. 1989). Intervention should be allowed under this rule where it would "strengthen the adequacy of [the] representation." Eckert v. Equitable Life Assur. Soc'y of the United States, 227 F.R.D. 60, 64 (E.D.N.Y. 2005) (quoting Herbert Newberg & Alba Conte, Newberg on Class Actions § 16:8 (4th ed.)).

**1.      Independent grounds for jurisdiction exist.**

Federal courts must consider whether or not the intervenor has grounds for jurisdiction in determining permissive intervention. The Court here has jurisdiction independent of the main action under the federal securities laws.

**2.      Motion is timely.**

As discussed in detail in Section IV. A. 3, the motion to intervene has been timely filed.

**3.      Common question of law or facts exist.**

To the extent that the PERS' Complaint and the actions assert claims against similar

defendants for violations of the federal securities laws, there are common questions of law and fact. Such common questions of law and fact include: (i) whether the federal securities laws were violated by defendants' acts; (ii) whether statements disseminated to the investing public and to Mercury's common stock holders during the class period misrepresented material facts about the operating results and financial condition of the Company; (iii) whether defendants acted with knowledge or with reckless disregard for the truth in misrepresenting and/or omitting to state material facts; (iv) whether, during the class period, the market price of Mercury common stock was artificially inflated due to the material misrepresentations and/or non-disclosures complained of herein; (v) whether the defendants participated in and pursued the common course of conduct complained of herein; and (vi) whether the members of the class have sustained damages and, if so, what is the proper measure thereof.

### 4.   No delay or undue prejudice exists.

As noted above, the lead plaintiff motion is scheduled for hearing on December 9, 2005. No decision has been rendered. Mississippi PERS promptly moved to intervene and the case is not far along in the litigation process. Thus, there will be no undue delay in the action. Indeed, the effect of any minor delay which may result in granting Mississippi PERS' motion will be substantially outweighed by the benefit of putting all affected shareholders on notice of the claims against the Company and giving them an opportunity to move for lead plaintiff. Thus, Mississippi PERS' participation in this action will greatly strengthen and improve the representation of the class.

## V.   <u>CONCLUSION</u>

Based on the foregoing, Movant Mississippi PERS respectfully requests that the Court grant Movant's motion (1) to intervene in the above action; (2) to file the PERS' Complaint with a class period of October 22, 2003 through November 1, 2005; and (3) to publish a notice to

investors of the Mississippi PERS' action and of the right to move for lead plaintiff within 60 days of publication thereof.

Movant further requests that the Court reserve judgment on the MPF Group's Motion for Lead Plaintiff until the Court hears Mississippi PERS' motion.


Dated: November 28, 2005                    **SCHUBERT & REED LLP**


_____/s/_____
Robert C. Schubert  S.B.N. 62684
Juden Justice Reed  S.B.N. 153748
Willem F. Jonckheer  S.B.N. 178748
Three Embarcadero Center, Suite 1650
San Francisco, California 94111
Telephone: (415) 788-4220
Facsimile: (415) 788-0161

Local Counsel for Plaintiff

**WOLF POPPER LLP**
Marian P. Rosner
Michael A. Schwartz
Renee L. Karalian
845 Third Avenue
New York, New York 10022
Telephone: (212) 759-4600
Facsimile: (212) 486-2093

Counsel for Plaintiff Public Employees'
Retirement System of Mississippi